UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
UNITED STATES OF AMERICA,

                                                   **OPINION AND ORDER**

   - v -

                                                 MJ-12-207 (VVP)

GARY ROGERS,
                Defendant.
------------------------------------------------------------x

        The defendant has moved to dismiss the two criminal offenses with which he has been charged on the ground that they are outside the scope of state law offenses that may be charged under the Assimilative Crimes Act, 18 U.S.C. § 13. The essence of the defendant's argument rests on the proposition that the government may not charge an offense of state criminal law, through the Assimilative Crimes Act, if a federal statute provides criminal penalties for the conduct underlying the charges brought against the defendant.

        The two criminal charges brought pursuant to the Assimilative Crimes Act that the defendant faces here are attempted petit larceny, in violation of sections 110 and 155.25 of New York Penal Law, and the attempted possession of stolen property in the fifth degree, in violation of sections 110 and 165.40 of that Law. The defendant identifies three federal statutes that he contends cover the conduct underlying the charges here and that therefore preclude the government from charging violations of the New York Penal Law under the Assimilative Crimes Act.

        The basic purpose of the Assimilative Crimes Act is to borrow state law to fill gaps in the federal law applicable on federal enclaves. *Lewis v. United States*, 523 U.S. 155, 160 (1998)(*citing Williams v. United States*, 327 U.S. 711, 718-19 (1946)). The parties agree that the Supreme Court's opinion in *Lewis* provides the two-step test for determining the question

whether there is a gap that requires filling. The first step requires the court to ask whether the defendant's act or omission is made punishable by any act of Congress. *Id.*, 523 U.S. at 164. If the answer is "no," then the Assimilative Crimes Act may be used to import any applicable state law. If the answer is "yes," the court moves to the second step which requires the court to determine whether the applicable federal statutes preclude application of the state law for any one of three reasons: "because its application would interfere with the achievement of a federal policy, . . . because the state law would effectively rewrite an offense definition that Congress carefully considered, . . . or because federal statutes reveal an intent to occupy so much of a field as would exclude use of the particular state statute at issue." *Id.* (citations omitted).

A preliminary question that must be addressed before conducting the first step of the *Lewis* analysis is precisely what conduct is to be considered when determining whether the defendant's "act or omission" is made punishable by any act of Congress. Does the court look to the charging language in the accusatory instrument, or does the court look to the proof that the government is expected to offer as evidence of the defendant's guilt of the charge in the accusatory instrument?[1] This court concludes it must be the former. The government has always retained the discretion to frame the charges that it wishes to bring, regardless of whether the conduct it will offer in support of those charges might also be proof of guilt of other charges not brought. If the court is required to examine the proof the

---

[1]The court notes in passing that the existing authorities provide little guidance on this question, because the issue has invariably been raised post-trial, when the evidentiary record is complete. Here, the issue arises pretrial, when there is no evidentiary record yet established.

government is expected to offer as evidence of the defendant's guilt to determine whether some federal charge could be brought based on that evidence, the court would be substituting its judgment for that of the prosecutor with respect to the charges to be brought against a defendant. That is beyond the proper role of the court. Rather the court should simply look at the crime charged to determine whether proof of the elements of that crime would *necessarily* be sufficient to also prove a violation of federal law. The court uses the word "necessarily" purposefully. As the discussion below will show, the coverage of the state statutes at issue here overlap with the coverage of the federal statutes identified by the defendant such that there are factual scenarios which would provide proof sufficient for convictions under both the state and the federal laws. But that does not establish that there are no gaps in the federal law that require filling by the state law. Rather, there are no gaps in the federal law only if *every* factual scenario that would provide proof of the state law violation would also provide proof of a federal violation. Or, to put it another way, there exists a gap for state law to fill if there are circumstances where a defendant could be found guilty of the state offense without also being guilty of some federal offense.

Upon examination of the specific charges here as stated in the accusatory instruments, there are significant gaps such that one could be found guilty of the state charges without also being guilty of the federal enactments identified by the defendant. Each of the two accusatory instruments charges an attempt, which New York law defines as follows:

> A person is guilty of an attempt to commit a crime when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime.

N.Y. Penal Law § 110.00. Proof of an attempt thus does not require proof that a crime was actually committed. *See People v. Naradzay*, 11 N.Y.3d 460, 466 (2008) (a defendant must engage in conduct "dangerously near" commission of the completed crime, but not necessarily the "final step" necessary to commit the offense). Each of the three federal statutes cited by the defendant, on the other hand, require proof of a completed offense; none criminalize only attempts. That alone is sufficient to end the inquiry. As there is no federal enactment that is applicable to the defendant's act as charged in the accusatory instrument, the government may borrow state law under the Assimilative Crimes Act. *See Lewis*, 523 U.S. at 165.

Even putting aside the absence of any possible prosecution for attempts under the federal statutes, there are other gaps left by those statutes that the state laws here can fill. The statute defining the substantive offense that is the subject of the charge of attempted possession of stolen property in the fifth degree provides,

> A person is guilty of criminal possession of stolen property in the fifth degree when he knowingly possesses stolen property, with intent to benefit himself or a person other than an owner thereof or to impede the recovery by an owner thereof.

N.Y. Penal Law § 165.40. To prove the crime, then, the government need only establish that the defendant knowingly possessed stolen property with the intent to deprive the owner of it.

Each of the federal statutes that the defendant cites in support of his argument requires something more than simple possession of stolen property, and thus proof of the state offense will not necessarily be sufficient to prove any of the federal offenses. Section 641 of title 18, United States Code, provides criminal penalties for anyone who "receives,

conceals, or retains" "any record, voucher, money, or thing of value of the United States." 18 U.S.C. § 641. The government properly points out, however, that this statute applies only if the stolen property belongs to the government, an additional element that the state law does not require.

The two other sections of the United States Code cited by the defendant in support of his argument that federal statutes cover the offense charged here under the Assimilative Crimes Act each apply solely to conduct committed within the special maritime and territorial jurisdiction of the United States.[2] Section 661 provides criminal penalties for "[w]hoever, within the special maritime and territorial jurisdiction of the United States, takes and carries away, with intent to steal or purloin, any personal property of another." 18 U.S.C. § 661. A successful prosecution under the statute, by its specific terms, requires proof that the defendant engaged in the acts of taking and carrying away property while within the special maritime and territorial jurisdiction of the United States; simply possessing stolen property there is not enough. Thus, a defendant who "takes" and "carries away" stolen property somewhere outside the special maritime and territorial jurisdiction of the United States could not be prosecuted for merely possessing that stolen property within the jurisdiction. Similarly, the crimes defined in section 662 do not cover simple possession of stolen property within the special maritime and territorial jurisdiction of the United States. 18 U.S.C. § 662. That statute applies to a defendant who "buys, receives, or conceals" stolen

---

[2]The term "special maritime and territorial jurisdiction of the United States" is defined in 18 U.S.C. § 7, and corresponds in large part to the territorial application of the Assimilative Crimes Act.

property within that area. It would not apply to a defendant who has bought, received or concealed stolen property outside the jurisdiction, and simply possessed the property within the jurisdiction. The court concludes, then, that the state law concerning possession of stolen property under which the prosecution is proceeding here permits the government to prosecute crimes that are not covered by any of the federal statutes cited by the defendant.

The court reaches the same conclusion with respect to the other charge against the defendant here, attempted petit larceny. The statute defining the substantive offense that is the subject of that charge provides, "A person is guilty of petit larceny when he steals property." N.Y. Penal Law § 155.25. New York law further defines the phrase "steals property" and the term "larceny" as follows:

> A person steals property and commits larceny when, with intent to deprive another of property or to appropriate the same to himself or to a third person, he wrongfully takes, obtains or withholds such property from an owner thereof.

N.Y. Penal Law § 155.05. Comparing the coverage of the state petit larceny law with 18 U.S.C. § 641, the state law permits the prosecution of thefts of private property that occur on federal enclaves, whereas the federal statute does not because it applies only to thefts of government property. Similarly, although sections 661 and 662 of title 18 cover some thefts of private property, they do not cover the full range of larcenies covered by the state law. Section 661 requires the taking and carrying away of property, while the state law permits prosecution for simply obtaining or withholding the property of another. Section 662 requires proof that stolen property is bought, received or concealed in the federal enclave, and thus would not reach a defendant who bought, received or otherwise obtained stolen

-6-

property outside the federal enclave but simply withheld it from its owner within the enclave. Simply put, the full range of conduct covered by the charge of petit larceny is not covered by the various federal statutes cited by the defendant (or any others to the court's knowledge).

Because the answer to the first step in the *Lewis* analysis is "no," there is no bar to the use of the Assimilative Crimes Act to prosecute the defendant under the state laws at issue here. Even if the court were to conclude otherwise, however, the answer would be the same, for the defendant's motion also fails the second step of the *Lewis* analysis. The defendant points to no federal policy articulated by Congress that would be impeded by the application of these state laws. Nor is there any evidence that Congress carefully considered and rejected the offense definitions set out in those laws. And there is no indication of any intent by Congress to "occupy so much of the field" as to exclude use of the state statutes at issue here. *See Lewis*, 523 U.S. at 164-66.

In evaluating the state laws in question here as part of the second step in the *Lewis* analysis, the court notes the Supreme Court's admonition that the ultimate question to be answered in the second step is, "Does applicable federal law indicate an intent to punish conduct such as the defendant's to the exclusion of the particular state statute at issue?" *Id.*, 523 U.S. at 166. Nothing in the three statutes cited by the defendant indicates any such intent. Each of the three statutes makes but one distinction concerning the value of the property that is protected by them: offenses involving property with a value in excess of $1,000 are treated as felonies punishable by imprisonment exceeding one year, while offenses involving property with a value of $1,000 or less are treated as misdemeanors punishable by

imprisonment of up to one year. Permitting the government to adopt state law through the Assimilative Crimes Act provides additional flexibility to bring the less serious charges of attempted possession of stolen property and attempted petit larceny, offenses which carry a maximum term of imprisonment of but three months each. *See* N.Y. Penal Law §§ 110.05(8), 70.15(2). That flexibility offers considerable benefit to both the prosecution and the defendant, particularly where the value of the property involved is considerably less than $1,000 as it appears to be here. In such a case the prosecution would not be required to bring a charge that carries sentencing exposure of up to one year, and the defendant would not have to face possible punishment of up to one year. Where the property value is low, the lesser charge would more accurately reflect the relative seriousness of the offense. Moreover, being able to bring the lesser charge would spare the government and the court the burden and expense of conducting a jury trial for even the most minor theft.[3] Nothing in the federal statutes suggests that such flexibility would be undesirable.

The downward charging flexibility employed by the government here is distinguishable from the attempt at upward charging under the Assimilative Crimes Act rejected by the Supreme Court in *Lewis*. There, the government sought to enhance the punishment that could be imposed on a defendant for a murder by charging the defendant with first-degree murder under state law, when federal law classified the offense as second-

---

[3] Because each of the federal statutes cited by the defendant carry terms of imprisonment of up to one year for the misdemeanor offenses they define, prosecutions under those laws require a jury trial, whereas prosecutions for offenses carrying terms of imprisonment of six months or less do not. *See Cheff v. Schnackenberg*, 384 U.S. 373, 379-80 (1966); *accord Lewis v. United States*, 518 U.S. 322, 323-24 (1996).

-8-

degree murder. The Court's approach in *Lewis* is particularly instructive. Unlike here, there was no dispute in that case that both the federal and the state law covered the conduct charged. The court thus moved to the second step of the inquiry and engaged in a detailed analysis of the legislative history that accompanied the enactment of the federal murder statute, examining the text of the federal murder statute in detail as well as the various adjustments Congress had made in drawing the line between first- and second-degree murder. The Court noted the specificity with which Congress defined the variants of murderous conduct that were placed in the category of first-degree murder. Only after determining from that examination that Congress had carefully decided to cover the full range of behavior punishable by the federal murder statute did the Court conclude that there was no gap in the federal law for the state statute to fill.

Here, there is no such detailed line-drawing. There is no effort to differentiate between variants of behavior with respect to stolen property and to provide differences in punishment based on those variants. There is only a single line, drawn at $1,000, differentiating felonies from misdemeanors. This hardly suggests that Congress intended to exclude the application of state law, and thus require the government to bring charges bearing punishment of up to one year in prison for even the most minor of thefts.

The defendant relies on the Supreme Court's opinion in *United States v. Sharpnack*, 355 U.S. 286, 293-94 (1958), for language suggesting that by enacting various criminal statutes specifically applicable to federal enclaves, Congress has excluded state law from the field that

those statutes occupy.[4] Thus, the argument goes, since Congress has enacted several statutes applicable to certain property thefts occurring in federal enclaves, *Sharpnack* prohibits the use of any state law concerning stolen property under the Assimilative Crimes Act.

There are at least two difficulties with the argument. First, the language quoted by the defendant is only dictum. It occurs in a general discussion concerning the history of the Assimilative Crimes Act, and the Court did not rely on that proposition in reaching the result in that case which, incidentally, permitted the government to import a state statute under the Assimilative Crimes Act. Second, and more importantly, the Supreme Court's more recent opinion in *Lewis* eviscerates any precedential value that the dictum quoted from *Sharpnack* may possess. The federal statute at issue in *Lewis* was the federal murder statute, 18 U.S.C. § 1111, a statute applicable only on federal enclaves. Thus, if the language quoted from *Sharpnack* were controlling, the mere fact that there was a federal murder statute that occupied the field of murder would have decided the issue of whether a state murder statute could be applied under the Assimilative Crimes Act. But that was not dispositive in *Lewis*. Rather, the Court undertook a detailed examination of the federal murder statute, both its legislative history and how it had been carefully constructed by Congress, before reaching the

---

[4]The specific language to which the defendant points is as follows:

> During the same period, Congress has recognized a slowly increasing number of federal crimes in the field of major offenses by enacting for the enclaves specific criminal statutes which have defined those crimes and, to that extent, have excluded the state laws from that field.

*Sharpnack*, 355 U.S. at 293-94.

conclusion that by enacting that statute Congress had indeed intended to "occupy the field." *Cf. United States v. Rocha*, 598 F.3d 1144, 1150 (9th Cir. 2010) ("amalgam of federal theft statutes" not comprehensive and therefore do not "occupy the field"). There is nothing to indicate that the circumstances surrounding the enactment of the federal statutes at issue here are comparable to those that proved decisive in *Lewis*.

For the foregoing reasons, the defendant's motion to dismiss the charges brought under the Assimilative Crimes Act is denied.

SO ORDERED:

*Viktor V. Pohorelsky*

VIKTOR V. POHORELSKY
United States Magistrate Judge

Dated:     Brooklyn, New York
              May 21, 2012